**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No: 13 B 04868 |
| | ) | |
| ROBERT AND JAMI WILDEMAN, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Judge LaShonda A. Hunt |

## MEMORANDUM OPINION

Debtors Robert and Jami Wildeman were granted leave to reopen their chapter 7 case to pursue contempt proceedings against the Illinois Department of Revenue. The Wildemans contend that IDOR violated the discharge injunction by collecting 2004 state taxes—liability, interest, and penalties—that were discharged in their 2013 bankruptcy case. IDOR concedes that, at most, two of the five assessed penalties are dischargeable. Otherwise, IDOR asserts, the remaining state-tax debts are excepted from discharge under 11 U.S.C. §§ 523(a)(1)(B) and 523(a)(7), because the Wildemans failed to file an amended state return and the tax penalties were imposed within three years of the bankruptcy petition date. Furthermore, IDOR maintains that attempts to collect any discharged penalties were objectively reasonable and therefore a finding of civil contempt is not warranted. For the reasons that follow, the court agrees with IDOR. Accordingly, the Wildemans' motion for an order of contempt will be denied.

## BACKGROUND

The relevant facts have been drawn from the parties' written submissions and statements at oral argument. The court also takes judicial notice of the bankruptcy docket. *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

IDOR submitted a declaration from Jeffrey Eisner, Supervisor of the IDOR Bankruptcy Unit, that detailed its communications with the Wildemans about the reassessment of their 2004 state taxes. IDOR also proffered an account transcript from the Internal Revenue Service of transactions pertaining to their 2004 federal taxes. Because the Wildemans have not challenged the authenticity of any of these documents or the accuracy of the information contained therein, those facts will be deemed true and undisputed.

The Wildemans filed their 2004 federal tax return with the IRS in February 2006. Although the federal return was due by October 15, 2005, the late submission had no negative effect, as they were entitled to and eventually received a refund from the IRS. Using the adjusted gross income (AGI) calculated on the federal return, the Wildemans filed their 2004 Illinois tax return in March 2006. The late state return resulted in interest and penalties due to IDOR, which the Wildemans had paid in full by July 2006.

In February 2007, the IRS initiated an examination of the Wildemans' 2004 federal return, and subsequently concluded that their AGI was significantly higher than reported. As a result, on June 22, 2009, the IRS reassessed their 2004 federal tax liability and determined they owed nearly $100,000 more in additional tax, interest, and penalties.

Sometime in 2009, the IRS notified IDOR about the reassessment. In light of the increased AGI, IDOR undertook its own audit of the Wildemans' 2004 state taxes, and on October 12, 2010, issued a Notice of Proposed Tax Due for $21,120 in further tax, interest, and penalties. A month later, the Wildemans responded to IDOR in writing, expressing disagreement with those findings and requesting to speak with a revenue agent.

In the meantime, the Wildemans had been pursuing a compromise of their outstanding tax debt with the IRS. On August 23, 2010, the IRS recorded a federal tax lien on their personal

residence for unpaid 2003 and 2004 taxes.  The next day, the agency issued a notice of lien filing and right to collection due process hearing.  However, on November 10, 2010—the same day they challenged IDOR's initial notice of tax due—the Wildemans established an installment agreement with the IRS.

Notwithstanding their apparent resolution of the additional 2004 federal tax liability with the IRS, the Wildemans continued to contest IDOR's reassessment of their 2004 state tax liability. IDOR notified them in August 2011 that the AGI increase was based on information from the IRS, as indicated in the 2004 IRS account transcript attached to the letter.  The Wildemans objected to IDOR issuing a deficiency determination more than three years after the state return had been filed, citing 35 ILCS 5/905(a)(1).  Still, IDOR sent them a Notice of Deficiency on October 4, 2011, along with an examiner's report reflecting a recalculated 2004 state tax liability of $30,272.  Even though the deficiency notice advised them of their right to file a protest and seek administrative review of that decision, the Wildemans took no further legal action.  Significantly, they have never filed an amended return with the state.  On December 19, 2011, IDOR issued a Final Notice of Tax Due for 2004, with an unpaid balance of $30,520.84.

On February 8, 2013, the Wildemans filed a joint chapter 7 bankruptcy petition.  Schedule E listed unsecured priority debt for 2003 and 2004 taxes due to the IRS for $600,000 and to IDOR for $22,000.  Their bankruptcy discharge orders were entered on May 13, 2013.  Shortly thereafter, IDOR recorded a tax lien against their assets pursuant to 35 ILCS 5/1103.  In October 2013, IDOR issued a wage levy for Mr. Wildeman and began monthly collections on the outstanding state tax

debt.[1]  The IRS, on the other hand, released its federal tax lien and did not pursue further collections

post-discharge.[2]

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §

151 and Internal Operating Procedure 15(a) of the United States District Court for the Northern

District of Illinois.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

### I.   Dischargeability of State-Tax Related Debts

The Wildemans seek an order of contempt against IDOR for its post-discharge collection

of the 2004 reassessed amounts—$13,329.50 in taxes, $11,783.04 in interest, and $3,172.86 in

penalties—totaling $28,285.40.  But the threshold issue to be decided is whether these debts were

in fact discharged in May 2013.  Generally, a discharge order "discharges the debtor from all debts

that arose before the date of the order for relief under this chapter. . . ."  11 U.S.C. § 727(b).

However, section 523 of the Bankruptcy Code contains several exceptions to discharge that apply

to tax obligations.  Here, the parties dispute whether the 2004 state tax liability, interest, and related

penalties fall within the provisions of 11 U.S.C. §§ 523(a)(1)(B) and (a)(7).

---

[1] The Wildemans initially asked in the motion that IDOR be ordered to return $34,436.38.  However, IDOR's response brief identifies total post-discharge collections of $31,688.08 for 2004, 2011, and 2012 taxes.  IDOR also notes that, post-discharge, Mr. Wildeman filed an appeals petition with the IDOR Board of Appeals in August 2014, and in December 2017, the Board issued an order compromising their liability for 2004, 2011, 2012, and 2013 for a total of $9,500 in interest to be paid in 36 monthly installments.  The Wildemans completed all payments, and in April 2019, IDOR released its tax lien.  For purposes of this motion, the parties agree that only the 2004 state taxes are at issue, for which IDOR collected a total of $28,285.40 post-discharge.

[2]  Upon further questioning from the court during oral argument, counsel for the Wildemans explained that they negotiated the release of the lien with the IRS after the bankruptcy case was filed, since the IRS considered the debt too old and uncollectible given their lack of assets.  Dkt. #37, Transcript of Oral Argument on Sept. 16, 2020, at 16-18.

IDOR asserts that these exceptions apply and render nearly all of the Wildemans' state tax debt nondischargeable.  As an objecting creditor, IDOR bears "the burden of proving by a preponderance of the evidence that an exception to discharge applies." *In re Jahrling,* 816 F.3d 921, 925 (7th Cir. 2016), citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).  Having considered the legal arguments raised in the briefs and at oral argument as well as the evidence in the record, the court concludes that IDOR has met its burden.

**A.  Tax Liability**

Section 523(a)(1)(B) of the Bankruptcy Code provides that:

> A discharge under section 727. . . does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
>> (B) with respect to which a return, or equivalent report or notice, if required—
>>
>>> (i)  was not filed or given; or
>>>
>>> (ii) was filed or given after the date on which return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;

11 U.S.C. § 523(a)(1)(B).  The Wildemans' contempt motion initially focused on subsection (ii), and pointed to the original 2004 state return filed in 2006—seven years before the petition date.  However, IDOR countered in response that subsection (i) is the applicable ground for a finding of nondischargeability, as it is undisputed that the Wildemans never amended their 2004 state return.

**1.  Amended return requirement under 35 ILCS 5/506(b)**

An Illinois taxpayer is required to file an amended state return if the taxable income "reported in an original or amended federal income tax return . . . is altered by amendment of such return or as a result of any other recomputation or redetermination of federal taxable income or loss."  35 ILCS 5/506(b)(1).  Furthermore, the amended return "shall be filed not later than 120

5

days after such alteration has been agreed to or finally determined for federal income tax purposes or any federal income tax deficiency . . . has been assessed or paid, whichever shall occur first." 35 ILCS 5/506(b).

The Wildemans maintain that they were not required to file an amended return because they never agreed to the 2004 reassessment by the IRS and the recomputation of their 2004 federal taxable income has not been finally determined.   Neither assertion is supported by the record.

### a.  <u>Agreement resolving IRS reassessment</u>

According to the uncontested IRS account transcript for the 2004 tax year, the Wildemans established an installment agreement with the IRS for the reassessed federal taxes in November 2010.  Neither party acknowledged or addressed the implications of this agreement in their briefs or at oral argument.[3]  Nevertheless, the Wildemans insist that they have never accepted the IRS' changes to their 2004 AGI.

Granted, the account transcript does not outline the terms of the installment agreement, and any relevant documents from 2010 may no longer exist.  Without more detail, this court would not be inclined to rest a nondischargeability decision solely on an unexplained line in a transcript indicating that a resolution was reached.  Still, evidence of a compromise undercuts the argument that the Wildemans never "agreed to" the IRS deficiency assessment.

As such, assuming an agreement was made with respect to the recalculated federal AGI for 2004, that action would have triggered the obligation to file an amended state return reflecting the change within 120 days of the agreement—by March 2011—and the Wildemans did not comply.

---

[3]  In fairness, the court did not notice this salient detail prior to the argument either; therefore, no questions were posed about the significance, if any, of this transcript notation.

**b.  Final determination by the IRS**

It is equally undisputed that on June 22, 2009, the IRS determined the Wildemans underreported their 2004 taxable income, and at no time pre-petition, did they seek administrative review of either the IRS ruling or the ensuing IDOR redetermination of taxes due.  As already noted, the Wildemans apparently reached a settlement with the IRS three years before the bankruptcy filing and they accepted a compromise from IDOR three years after their bankruptcy discharges.  Yet, they maintain that their continued personal belief that the original 2004 state and federal returns were correct is enough to defeat a finding of finality.  That position is untenable.

Section 5/506(b) requires taxpayers to file an amended state return once a reassessment of federal taxable income is "finally determined for federal income tax purposes."  Because "the state income tax is based on adjusted gross income as reported on an individual's federal tax return . . . . any change in the reportable federal income would necessarily affect an individual's income reportable on his/her's Illinois income tax return."  *Haywood v. State of Illinois (In re Haywood)*, 62 B.R. 482, 485 (Bankr. N.D. Ill. 1986).  IDOR identifies the June 2009 reassessment notice as the moment the deficiency was "finally determined."  The court concurs.

Illinois courts reviewing analogous situations where the IRS examined tax returns and assessed deficiencies have ruled that the "formal assessment made by the IRS constitutes the final determination of the taxpayer's liability."  *Khan v. Deutsche Bank AG et al.*, 978 N.E.2d 1020, 1036 (Ill. 2012).  *Accord Federated Indus., Inc. v. Reisin*, 927 N.E.2d 1253, 1261-1262 (Ill. App. Ct. 1st Dist. 2010) (providing a detailed overview of the IRS audit procedure).  Indeed, "the final step in the process is the assessment of a deficiency, either via the taxpayer's consent to a deficiency assessment or the receipt of a final deficiency notice.  At that point, the matter is final as to the IRS and subject to legal appeal in federal tax court."  *Khan*, 978 N.E.2d at 1031.

Had the Wildemans exercised their rights under 26 U.S.C. §§ 6212, 6213, and 6512 and timely petitioned the Tax Court for a deficiency redetermination, an argument could have been made for not deeming the June 2009 recalculation as final for purposes of the state statute. Most likely, they would have been entitled to exhaust their legal remedies until the deficiency was agreed to, finally determined, or paid. Only then would the 120-day clock for notifying the state in an amended return of the final AGI corrections—and any resulting recalculation of their tax liability—begin.

But the Wildemans have not shown that they protested the final deficiency notice in accordance with the federal Tax Code. Merely expressing disagreement with tax authorities is not enough to prevent their redeterminations from becoming final and binding. Taxpayers who dispute an IRS audit determination must follow the formal procedures for seeking review. Taking no action is the equivalent of acquiescing to the change.

Consequently, as the reassessment was finally determined in June 2009, an amended state return reflecting their changed AGI was due by October 2009.

## 2. Nondischargeability under section 523(a)(1)(B)(i)

Based on the foregoing analysis, the Wildemans were required to amend their 2004 state tax return by the earlier of October 2009 (IRS final determination) and March 2011 (agreement with the IRS). Their failure to file any amendment puts them squarely within the bounds of the exception in section 523(a)(1)(B)(i).

Although they attempt to cast doubt on the outcome, that principle is well-established in this district. *See Cohn v. State of Illinois, Dept. of Revenue (In re Cohn)*, 96 B.R. 827, 828 (Bankr. N.D. Ill. 1988); *Haywood v. State of Illinois (In re Haywood)*, 62 B.R. 482, 485 (Bankr. N.D. Ill. 1986). Simply put, once the IRS "finally determined" the correct AGI, an amended return was

8

required under Illinois law. *See Cohn*, 96 B.R. at 828 (explaining that "by the clear language of the statute the debtors are required to notify the state by way of an amended return, signed by the debtor and filed within a prescribed time."). Since the Wildemans failed to comply with 35 ILCS 5/506(b), their 2004 tax liability was not discharged in the 2013 bankruptcy case. *See Haywood*, 62 B.R. at 485 (holding that "it is equally clear that if the debtor did not file the amended tax returns as required by Ill. Rev. Stat., ch. 120, para. 5-506(b), the taxes due are non-dischargeable under 11 U.S.C. § 523(a)(1)(B)(i).").

## B. Interest

IDOR asserts that all of the interest for the 2004 state tax relates entirely to the underlying tax debt. The Wildemans do not disagree with that contention. The Seventh Circuit has held that pre-petition interest is "accorded the same priority status as the underlying liability and found nondischargeable where the underlying liability is nondischargeable." *Matter of Larson*, 862 F.2d 112, 119 (7th Cir. 1988). Because the court has already concluded that the tax debt is nondischargeable, the interest on the tax is also nondischargeable.

## C. Tax Penalties

Section 523(a)(7) of the Bankruptcy Code provides that:

> (a)  A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (7)  to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a government unit, and is not compensation for actual pecuniary loss, other than a tax penalty–
>
>   (A)  relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>   (B)  imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

11 U.S.C. § 523(a)(7).

9

On its face, the statutory language does not appear ambiguous.  Yet questions have arisen about the proper construction of the subsections of 523(a)(7).  The only Seventh Circuit decision addressing dischargeability of tax penalties concluded that "subsection 523(a)(7)(A) mandates that fraud penalties are nondischargeable if the underlying tax with respect to which the penalty was imposed is also nondischargeable." *Cassidy v. Comm'r*, 814 F.2d 477, 481 (7th Cir. 1987).  That holding was interpreted to mean that *all* tax penalties associated with nondischargeable taxes are likewise nondischargeable, regardless of age.  The appellate court later narrowed the scope of its ruling in a second case involving the same debtor, and clarified that the Tax Court had no jurisdiction over the dischargeability of Cassidy's tax debts in bankruptcy; as such, discussion of that point was unnecessary to achieve the conclusion they reached and thus dicta.  *In re Cassidy*, 892 F.2d 637, 640–41 (7th Cir. 1990).

IDOR acknowledges the shift in *Cassidy II* but nonetheless urges this court to consider the initial interpretation of *Cassidy I.*  But the only logical conclusion to be drawn from the Seventh Circuit's retreat is that lower courts are "bound by *Cassidy II*'s determination that *Cassidy I*'s 'ruling' is dicta, and therefore *Cassidy I* has no preclusive impact."  *Bush v. United States (In re Bush)*, 549 B.R. 707, 711 (Bankr. S.D. Ind. 2016).  *See also United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (explaining that dicta is "the part of an opinion that a later court, even if it is an inferior court, is free to reject").

The majority of circuit courts have adopted a disjunctive reading of section 523(a)(7).  The Eleventh Circuit offered a succinct summary of the statutory requirements: "a tax penalty is discharged if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) *or* if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition." *Burns v. United States (In re Burns)*, 887 F.2d

1541, 1544 (11th Cir. 1989) (emphasis supplied).  Similarly, in *Roberts v. United States (In re Roberts)*, the government pressed the Tenth Circuit to review the legislative history behind those subsections that favored a conjunctive interpretation that would require both subsection A *and* B to be satisfied, such that "penalties assessed on dischargeable tax liabilities arising less than three years before bankruptcy could not be discharged." 906 F.2d 1440, 1443 (10th Cir. 1990).  The Tenth Circuit declined, finding the plain language of the statute "neither ambiguous nor difficult to understand" and concluding that a conjunctive reading would stretch the provision too far.  *Id.*

The majority reasoning is persuasive.  Indeed, "the use of the disjunctive, without further qualification of either subsection, leaves no doubt that Congress intended to create two independent measures for the dischargeability of tax penalties."  *Burns,* 887 F.2d at 1545.  Therefore, tax penalties are dischargeable if they do not relate to a tax of a kind specified in section 523(a)(1) or were imposed with respect to a transaction or event that occurred more than three years before the date of the filing of the petition.

The Final Notice of Tax Due issued on December 19, 2011 indicates that IDOR imposed five penalties relating to the Wildemans' reassessed 2004 state tax liability: (1) Late Payment—$1,605.80;[4] (2) Late Filing—$29.30; (3) Audit Late Payment—$1,437.76; (4) Amnesty—$3,072.86; (5) Collection—$100.  The total penalty assessed was $6,245.72; post-discharge, the Wildemans paid $3,172.86.

### 1.  Nondischargeability under Section 523(a)(7)(A)

The tax penalties all arose from the Wildemans' failure to file an amended state return and subsequent failure to pay the additional tax liability assessed by IDOR.  As already explained, the underlying 2004 tax liability is nondischargeable under section 523(a)(1)(B)(i) because the

---

[4] IDOR's response brief lists the amount of the late-payment penalty as $1,437.76. Resolution of the exact amount is not required in order for the court to rule on dischargeability.

11

required state return was not filed by October 2009 in accordance with 35 ILCS 5/506(b).   Since these penalties relate to a nondischargeable tax under section 523(a)(1), none of them are dischargeable under section 523(a)(7)(A).

### 2.   <u>Nondischargeability under Section 523(a)(7)(B)</u>

The discharge injunction applies to any tax penalty imposed with respect to a transaction or event that occurred before February 8, 2010—three years prior to the bankruptcy filing.  If, as the Wildemans assert, the appropriate "transaction or event" is the original deadline for filing the 2004 taxes—October 2005—or even the due date for filing an amended state return—October 2009—the penalties are all dischargeable.  On the other hand, if, as IDOR argues, the appropriate "transaction or event" is the issuance of the Notice of Proposed Tax Due—October 2010—or the Final Notice of Tax Due—December 2011—all of the penalties are nondischargeable.

Unfortunately, neither "transaction" nor "event" are defined in the Bankruptcy Code.  *See In re Karim,* 612 B.R. 904, 913 (Bankr. N.D. Ill. 2020).  However, "[v]irtually all courts that have interpreted § 523(a)(7)(B) have done so in the context of penalties assessed in conjunction with federal or state income taxes" and concluded that "[p]enalties of this type tend to be imposed automatically upon the occurrence or non-occurrence of some event." *Id.* at. 914 (collecting cases). Usually, that event would be "the expiration of the period to file or pay." *Id.* at 915.  *See also In re McCarthy* 553 B.R. 459, 466 (Bankr. D. Mass. 2016) (construing late filed penalties as applying to "the expiration of the deadline to timely file the associated return . . . and the expiration of the deadline to timely pay the tax. . . ").  However, even though these five distinct penalties relate to the 2004 state taxes, it would be improper to focus on a single defined "transaction" or "event" as each party suggests.  Rather, because the penalties are separate and their associated deadlines vary, the court must take into account the circumstances that triggered their imposition.

With respect to failure-to-file penalties, a majority of courts have held that the causal event is the failure to file an amended tax return when the duty to do so arises. *See e.g. In re Giacci*, 213 B.R. 517, 520 (Bankr. S.D. Ohio 1997); *In re Aikman*, 554 B.R. 95, 99 (Bankr. W.D. Pa. 2016; *McCarthy* 553 B.R. at 466. In *Giacci,* a factually similar case, the IRS audited the debtor and reported a change in income to the state of Ohio. *Giacci*, 213 B.R. at 519. The debtor did not file an amended return with the state as required under Ohio law; he later sought bankruptcy relief. *Id.* The bankruptcy court found the underlying tax debt was nondischargeable, and then moved on to consider the related penalties. *Id.* at 520. For purposes of evaluating dischargeability of the tax penalties, the court deemed the transaction or event which imposed the penalty as the debtor's failure to file the amended state tax return, as "the (original) return, in and of itself, did not give rise to the penalty." *Id.*

By the same token, the October 2005 due date for the Wildemans' original 2004 return cannot be the operative "transaction" or "event" with respect to which any of these penalties were imposed. But the Wildemans are partially correct, in that October 2009 is the appropriate cutoff date for any penalty assessed by IDOR due to their failure to file the amended 2004 return. The late-filing penalty of $29.30 falls into that category, as it was assessed for "failure to file the tax return or on before the due date prescribed for filing." 35 ILCS 735/3-3(a-10). Because that event occurred more than three years before filing, the late-filing penalty was discharged.[5]

As to the four remaining penalties, those were imposed because the Wildemans failed to pay the reassessed taxes. But they do not all have the same expiration period. For example, both the late-payment penalty of $1,605.80 and the audit late-payment penalty of $1,437.76 arise under

---

[5] IDOR also points to the original return due date (which includes an automatic 6-month statutory extension) in October 2005 as proper, but that is inaccurate. Regardless, October 2005 and October 2009 both fall outside the three-year lookback period, and IDOR does not dispute dischargeability of this particular penalty.

35 ILCS 735/3-3(b-20). Pursuant to 35 ILCS 735/3-3(b-20)(3), a penalty imposed under this subsection "shall be deemed assessed at the time the tax upon which the penalty is computed is assessed. . . ." That language attributes the triggering event to IDOR's assessment of the tax, which was not until October 12, 2010, when IDOR initiated its own audit and determined the reassessed amount due for 2004. Because that occurred less than three years before filing, neither of the late-payment penalties were discharged.

IDOR in fact posits that the late-payment penalty arose in May 2005, upon expiration of the deadline to pay all 2004 taxes, and so was discharged. That contention is not illogical, given that late-payment penalties are imposed on all unpaid taxes due after the original deadline to pay has expired, including later-assessed tax liabilities. Typically, the court affords great deference to IDOR with respect to the interpretation of Illinois tax-related statutes. But where it appears that the Illinois legislature expressly delineated the "transaction" or "event" as the IDOR assessment date, the court declines to construe the deadline in a manner that does not comport with the plain language of the statutory provision under which the penalty arises.

Likewise, the Wildemans suggest that the audit late-payment penalty should be tied to October 2009, the due date for their amended return. However, Illinois law provides that "[i]f the taxpayer has failed to file the return, the Department shall determine the correct tax according to its best judgment and information, which amount shall be prima facie evidence of the correctness of the tax due." 35 ILCS 735/3-3(f). While IDOR's obligation to conduct an audit may have commenced in October 2009, the statute clearly provides that the penalty arises from the October 2010 audit finding assessing the additional tax liability.

The Wildemans generally object to associating a transaction or event with IDOR activity— which is the case for these late-payment penalties—as doing so may allow states to delay imposing

14

penalties on old tax claims and thereby extend the three-year window for nondischarged tax debts. They urge the court to always construe the transaction or event as a fixed deadline tied to the inaction of taxpayers as opposed to the action of taxing authorities. But that approach ignores the clear mandate of section 523(a)(7)(B), which requires the court to ascertain the particular "transaction or event" the penalty was "imposed with respect to." *Karim*, 612 B.R. at 908. Again, the relevant statutory provision on late-payment penalties makes clear that is the IDOR assessment.

Next, the amnesty penalty of $3,072.86 is associated with a different event under 35 ILCS 735/3-3(j). Essentially, delinquent taxpayers were afforded an opportunity to pay outstanding final tax debts for certain years—including 2004—and in exchange, receive a waiver of all tax penalties and interest. *See* 35 ILCS 745/10. Taxpayers who did not "satisfy the tax liability during the amnesty period provided for in that Act for that taxable period" were assessed an additional penalty. *See* 35 ILCS 735/3-3(j). Since the amnesty period for 2004 taxes ran from October 1, 2010 through November 8, 2010, this penalty arose on November 9, 2010, at the expiration of the amnesty period, and less than three years before filing. Thus, the amnesty penalty was not discharged.

Finally, the collection penalty of $100 was assessed under 35 ILCS 735/3-4.5(b) and arises "if full payment is not received prior to the 31st day after a notice and demand, a notice of additional tax due or a request for payment of a final liability is issued by [IDOR]." The Final Notice of Tax Due is dated December 19, 2011, which puts the expiration date at January 2012, within three years of filing. Thus, the collection penalty was not discharged.

## II.   Civil Contempt and Sanctions

To summarize, the court finds that with respect to their 2004 state tax liability, taxes in the amount of $13,329.50, interest in the amount of $11,783.04, and penalties for late-payment, audit

15

late-payment, amnesty, and collection, in the amount of $6,216.42, are all nondischargeable under section 523(a).  The Wildemans were reassessed a total of $33,782.44 for their 2004 state taxes—and after the compromise with IDOR, paid only $28,285.40—but $31,328.96 of the tax debt was actually discharged.  IDOR points to those numbers as evidence that no funds were improperly collected from the Wildemans.  Nevertheless, the June 4, 2013 taxpayer statement from IDOR reflects a demand for payment of the late-filing penalty of $29.30 which was discharged in May 2013.  Because that collection attempt violated the discharge injunction in 11 U.S.C. § 523(a)(2), the court must consider whether IDOR should be held in civil contempt.[6]

The Supreme Court recently explained that a finding of civil contempt is appropriate "when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  *Taggart v. Lorenzen*, — U.S. —, 139 S. Ct. 1795, 1801 (2019).  In other words, there must be "no fair ground of doubt" that the discharge order prohibited IDOR from collecting the late-filing penalty of $29.30.  That standard is not satisfied here.

Post-discharge, IDOR justifiably proceeded with collection efforts for over $25,000 in tax liability and interest based on a sound reading of section 523(a)(1)(B)(i) and other controlling precedent.  The Wildemans offered no compelling defense for their admitted failure to file an amended state return.  Thus, notwithstanding their bankruptcy filing, the bulk of the 2004 state tax debt remained due and owing.  IDOR apparently assumed that their inaction also rendered the tax penalties collectible, but, noted above, reliance on the Seventh Circuit's dicta in *Cassidy I* is misplaced.  Still, it turns out that IDOR was primarily right, as this court found four of the five penalties assessed to be nondischargeable under section 523(a)(7)(B).

---

[6]  At the conclusion of the oral argument, the court indicated that civil contempt would be considered separately after the merits of dischargeability had been decided.  However, the court believes the contempt issue has been fully briefed and argued, with no further proceedings necessary, and is ripe for resolution.

To hold IDOR in civil contempt for misinterpreting the imposition date of a $30 "late-filing" penalty for a tax bill in excess of $30,000 would be patently unfair on these facts and under the law.  Frankly, there is a dearth of controlling precedent explaining how to define the bounds of the three-year lookback period.  General guidance points to using the expiration date for filing a return or paying taxes, but this case presented five separate penalties arising under multiple statutorily-defined trigger dates.  Reviewing the Illinois statutes through the lens of section 523(a)(7)(B) required identification of the specific "transaction" or "event" and the relevant imposition date.  Furthermore, practical considerations about tying deadlines to taxpayer inaction or agency action and choosing a static date or multiple dates for each particular penalty were raised. None of the cases cited by either party addressed those thorny concepts.  Instead, they all involved simpler factual scenarios where the relevant cutoff date was not in question and thus dischargeability was far easier to decide.  Before this court were contested issues of first impression about Illinois tax penalties that were less clear-cut.[7]  As such, the court cannot say that it was objectively unreasonable for IDOR to believe that any of these tax penalties were excepted from the discharge injunction under section 523(a)(7).

Because IDOR has established a good faith belief about nondischargeability of these tax penalties in an unsettled area of the law, civil contempt is not justified.  IDOR did raise at oral argument the possibility that to the extent the agency erroneously collected any discharged debts, those amounts should be refunded.  The court cannot tell one way or another if the Wildemans actually paid the discharged late-filing penalty to IDOR, since neither side provided documents

---

[7] Indeed, this court disagreed with IDOR on how to measure the "transaction" or "event" that led to the imposition of the late-payment penalty.  Even if IDOR is right and the penalty is discharged, the court would still find civil contempt unwarranted for the same reasons that apply to the late-filing penalty.

17

itemizing the $3,172.86 collected for penalties.  Accordingly, if IDOR should later determine that the discharged penalty was in fact improperly paid, then the only remedy that would be ordered by this court is a refund.  No other sanctions or fines would be imposed.

**CONCLUSION**

For all the foregoing reasons, the Wildemans' motion for contempt will be denied.  Because their 2004 state tax liability, interest, and all but one minor penalty, are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(B)(i) and 523(a)(7)(B), IDOR did not violate the discharge injunction. Concerning the one discharged penalty, that action was debatable and inconsequential enough that neither a finding of contempt nor the imposition of sanctions is warranted.

Dated:  March 3, 2021                                     ENTER:

_LaShonda A. Hunt_
Hon. LaShonda A. Hunt
United States Bankruptcy Judge